FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 27, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RIKKI C.,[1]<br><br>               Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Commissioner of Social Security,<br><br>               Defendant. | No. 4:17-CV-05204-EFS<br><br>**ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND DENYING PLAINTIFF'S SUMMARY JUDGMENT MOTION** |

Before the Court, without oral argument, are cross-summary-judgment motions. ECF Nos. 14 & 18. Plaintiff Rikki C. appeals the Administrative Law Judge's (ALJ) denial of benefits. ECF No. 1. Plaintiff contends the ALJ: (1) improperly rejected the opinion of Plaintiff's medical providers; (2) improperly rejected Plaintiff's testimony; and (3) conducted an improper Step Five analysis. ECF No. 14 at 9. The Commissioner of Social Security ("Commissioner") asks the Court to affirm the ALJ's decision. The Court has reviewed the administrative record and the parties' briefing. For the reasons set forth below, the Court affirms the ALJ's decision and therefore denies Plaintiff's motion and grants the Commissioner's motion.

---

[1] To protect the privacy of social-security plaintiffs, the Court refers to them by first name and last initial. *See* proposed draft of LCivR 5.2(c). When quoting the Administrative Record in this order, the Court will substitute "Plaintiff" for any other identifier that was used.

ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT - 1

## I. Standard of Review

On review, the Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.[2] "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] The Court will also uphold "such inferences and conclusions as the [ALJ] may reasonably draw from the evidence."[4]

In reviewing a denial of benefits, the Court considers the record as a whole, not just the evidence supporting the ALJ's decision.[5] That said, the Court may not substitute its judgment for that of the Commissioner. If the evidence supports more than one rational interpretation, a reviewing court must uphold the ALJ's decision.[6] Further, the Court "may not reverse an ALJ's decision on account of an error that is harmless."[7] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[8]

## II. Five-Step Disability Determination

The ALJ uses a five-step sequential evaluation process to determine whether an adult claimant is disabled.[9] The burden of proof

---

[2] *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)); *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1987).
[3] *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citations and internal quotation marks omitted).
[4] *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).
[5] *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).
[6] *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).
[7] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).
[8] *Id.* at 1115 (quotation and citation omitted).
[9] *See* 20 C.F.R. §§ 404.1520, 416.920.

shifts during this process. The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[10] At step five, however, the burden shifts to the ALJ to show that the claimant is not entitled to benefits.[11]

Step one assesses whether the claimant is currently engaged in a substantial gainful activity.[12] If he is, benefits would be denied.[13] If he is not, the ALJ proceeds to the second step.

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limit the claimant's physical or mental ability to do basic work activities.[14] If he does not, the disability claim is denied. If he does, the evaluation proceeds to the third step.

Step three compares the claimant's impairment to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[15] If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past by determining the claimant's residual functional capacity (RFC).[16] If the claimant is able to perform his previous work, the claimant is not disabled. If the

---

[10] *See Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971).
[11] *See Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984).
[12] 20 C.F.R. § 416.920(a)(4)(i).
[13] 20 C.F.R. §§ 404.1520(b), 416.920(b).
[14] 20 C.F.R. §§ 404.1520(c), 416.920(c).
[15] 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d).
[16] 20 C.F.R. §§ 404.1520(e), 416.920(e).

claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in light of his age, education, and work experience.[17] The Commissioner has the burden to show (1) that the claimant can perform other substantial gainful activity, and (2) that a "significant number of jobs exist in the national economy" that the claimant can perform.[18] If both these conditions are met, the disability claim is denied; if not, the claim is granted.

### III. Facts, Procedural History, and the ALJ's Findings[19]

Plaintiff Rikki C. was born on February 6, 1974, and is 44 years old. *See* Administrative Record (AR) 72. At the time of the hearing, she lived with her husband and two-year-old daughter. AR 24. Plaintiff asserts that she was diagnosed with Multiple Sclerosis (MS) in July, 2002 and has suffered symptoms ever since, preventing her from working. ECF No. 14 at 2. She worked as a sales associate at Albertson's from 2007 to January of 2010. AR 41-42. She then worked for two weeks at a temporary job at a paper mill. AR 41-42. On a day to day basis Plaintiff spends her days taking care of her infant daughter and visiting with friends at her home. AR 51-52.

---

[17] 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).
[18] *Kail*, 722 F.2d at 1497-98.
[19] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, and the parties' briefs.

ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT - 4

Plaintiff filed an application for supplemental security income, dated September 11, 2013, alleging a disability onset date of January 1, 2009. AR 20. Plaintiff's claim was initially denied, and upon reconsideration, Plaintiff requested a hearing before an ALJ on May 22, 2014, which was held on August 30, 2016. *Id*. On October 3, 2016, the ALJ, Laura Valente, rendered a decision denying Plaintiff's claim. AR 31.

At step one, the ALJ found the Plaintiff had not engaged in substantial gainful activity since January 1, 2009, the alleged onset date. AR 22.

At step two, the ALJ found the Plaintiff had the severe medical impairment of multiple sclerosis (MS). AR 22. She also noted Plaintiff's history of methamphetamine abuse, but concluded this issue to be non-severe and non-material to the case. *Id.* Finally, the ALJ noted Plaintiff's numerous psychological evaluations, but because she is not alleging a severe psychological impairment and she has not sought any significant, ongoing treatment for these issues, the ALJ did not find them to be severe medical impairments. AR 23.

At step three, the ALJ found that Plaintiff did not have an impairment that met the severity of a listed impairment. *Id.*

At step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform sedentary work. *Id.* She found the Plaintiff capable of: lifting and carrying ten pounds frequently and occasionally, sitting for six hours and walking for two hours during an eight-hour workday, and standing and walking for two hours out of an eight-hour workday. *Id.* The ALJ also found that Plaintiff can perform

all postural activities occasionally, but can never climb ladders, ropes or scaffolds. *Id.* Finally, the ALJ found she can frequently push and pull with the right lower extremity. *Id.*

In reaching these conclusions, the ALJ found that Plaintiff's MS could be reasonably expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of the symptoms are not entirely consistent with the medical evidence and other evidence presented in the record. AR 25.

When determining Plaintiff's RFC, the ALJ gave some weight to the opinion of Dr. Gordon Hale, an MD who filed a Disability Determination report for Plaintiff, as well as the DSHS opinions of examining Drs. Srinivas Mascal and David Martinez. AR 27-28. The ALJ gave little weight to the report from treating physician Dr. Hui Zhang, and the report from Dr. Zhang's physician's assistant Tauni Urdahl. AR 28. She also gave little weight to ARNP Louise Michels. *Id.*

At step five, the ALJ found that Plaintiff was not able to perform any past relevant work, including her experience as a cashier and checker, fast food worker, and general clerk. AR 29. However, given her age, education, work experience, and RFC, the ALJ found that there exist significant numbers of jobs that Plaintiff may perform. AR 29-30.

The ALJ issued its decision to deny Plaintiff benefits on October 3, 2016. AR 31. The Appeals Council denied Plaintiff's request for review, AR 1-3, making the ALJ's decision the Commissioner's final

decision for the purposes of judicial review.[20] Plaintiff filed this lawsuit on December 11, 2017. ECF No. 1.

## IV. Applicable Law & Analysis

### A. The ALJ did not improperly reject the opinion of treating physician Dr. Zhang.

Plaintiff alleges the ALJ improperly rejected treating physician Dr. Zhang's opinion and report. ECF No. 14 at 10. On July 30, 2015, Dr. Zhang opined that Plaintiff: could not lift more than ten pounds occasionally and less than ten pounds frequently; could not stand and walk more than two hours in an eight hour work day; could not sit for more than three hours in an eight hour work day; would need a sit stand option; would be off task for more than 50 percent of the work day; would need to lie down at unpredictable intervals three to four times per day; could not twist[,] scoop, [or] crouch for more than one third of the work day; could not climb; would have difficulty with fine manipulation, pushing, and pulling; and would miss four or more days of work per month. ECF No. 18 at 9; AR 390-91. If accepted, such an opinion would preclude Plaintiff from performing sedentary work.[21]

The ALJ gave Dr. Zhang's opinion little weight because (1) Dr. Zhang's report was inconsistent with his own treatment notes; (2) the report does not account for Plaintiff's improvement in her symptoms when taking medication; and (3) at the time his opinion was rendered, Plaintiff was able to "provide full-time care" for her infant daughter. AR 28. Plaintiff argues that the ALJ was required to give Dr. Zhang

---

[20] 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.
[21] *See* 20 C.F.R. § 404.1567(a).

great deference because he was her treating physician, and because his opinion was well-supported by the record. ECF No. 14 at 11.

### a. *Legal Standard*

Treating physicians' opinions are generally assigned a greater weight than non-treating physicians.[22] However, if the opinions of the treating and non-treating physicians contradict, the opinion of the treating physician may be rejected only if the ALJ articulates "specific, legitimate reasons for doing so that are based on substantial evidence in the record."[23] Although a non-treating physician's opinion on its own may not constitute "substantial evidence," an ALJ may reject a treating physician's opinion if it conflicts with "the overwhelming weight of the other evidence of record."[24]

### b. *Analysis*

**1) Dr. Zhang's treatment notes are inconsistent with his report and recommendation for Plaintiff's workload.**

Here, Dr. Zhang was Plaintiff's treating physician for several years, and therefore would ordinarily be afforded great deference.[25] However, Dr. Zhang's opinion contradicted those of two examining doctors, Dr. Mascal and Dr. Martinez. Dr. Martinez acknowledged Plaintiff's right arm weakness and numbness, and opined that Plaintiff was capable of performing "light work," meaning she was able to lift up to 20 pounds per day, frequently lift up to 10 pounds, and walk, sit

---

[22] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).
[23] *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)(internal quotations omitted).
[24] *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996).
[25] *Andrews*, 53 F.3d at 1041.

stand, push, and pull. AR 425. Dr. Mascal also opined that she could do "light work" of the same variety. AR 431-32. The limitations outlined in Dr. Martinez and Dr. Mascal's reports therefore directly contradict Dr. Zhang's report. Further, as the Commissioner points out, the only opinion in the record as restrictive as Dr. Zhang's is the 2010 report from his own physician's assistant, Tauni Urdahl. ECF No. 18 at 10. Ms. Urdahl issued a contradictory report that Plaintiff was capable of sedentary work, but also "unable to lift at least 2 pounds or unable to stand or walk." AR 455-66. Dr. Zhang's opinion therefore contradicted the opinions of the other examining doctors, and must be weighed against the "substantial evidence" standard.[26]

The Court finds the ALJ's reasons to afford Dr. Zhang's report little weight to be specific, legitimate, and supported by substantial evidence in the record.[27] In deciding to afford Dr. Zhang's report little weight, the ALJ noted that the report is inconsistent with Dr. Zhang's own "corresponding treatment notes." AR 28. Plaintiff asserts that the ALJ erred because Dr. Zhang's opinion was "well supported," particularly because her MRIs between 2009 and 2013 showed increased numbers of lesions, and she consistently reported "problems with fatigue." ECF No. 14 at 11-12. The Commissioner asserts that the MRIs that reflect progression in her lesions are accounted for by the contradicting examining doctors, and the new lesions did not reflect a marked increase in her symptoms. ECF No. 18 at 11-12.

---

[26] *See Jamerson*, 112 F.3d at 1066.
[27] *Id.*

ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT - 9

The Court finds that the record supports the ALJ's finding that Dr. Zhang's medical report is inconsistent with his treatment notes. Dr. Zhang has been Plaintiff's treating physician since 2009. AR 356-66. On July 30, 2015, Dr. Zhang filled out a medical report for Plaintiff's disability claim and attributed the aforementioned limitations to Plaintiff's "weakness, fatigue, pain, [and] gait difficulty" due to her MS. AR 391. However, Dr. Zhang's treating notes from July 30, 2015—the same day he issued his medical report for Plaintiff's disability claim—states that although Plaintiff was experiencing fatigue, she denied "difficulty with speech, vision loss, . . . weakness, [and] spasticity." AR 400. She also did not have visual disturbances, back pain, neck pain, or a gait problem. AR 401. Plaintiff also reported that she was "overall stable," and Dr. Zhang noted that she did not have any new lesions. AR 400.

Furthermore, although Plaintiff's MRIs reflect an increase in lesions between 2009 and 2013, AR 370, Plaintiff acknowledges that Dr. Zhang noted that the "lesion burden" was "stable" after reviewing her MRI from April, 2015. ECF No. 14 at 12; AR 400. And although an MRI from 2016 showed a new lesion, Dr. Zhang's treating notes from that date reflect that she was experiencing "minimal residual symptoms" from a recent exacerbation, and denied issues with her speech, weakness, vision loss, hearing loss, spasticity, dysphasia, and other symptoms. AR 494. She had no back or neck pain and, although Dr. Zhang noted her gait was "wide based," and "unsteady," he considered her "negative" for "gait problems." *Id.* The record therefore does not support Dr. Zhang's report

that her medical lesions would cause symptoms leading to her disability. *See* AR 391.

**2. Plaintiff's symptoms are generally controlled by medication.**

The ALJ specifically and legitimately reasoned that she should afford Dr. Zhang's report little weight because his report does not account for Plaintiff's apparent improvement in her symptoms when she was taking her medication as prescribed. Plaintiff correctly points out that "[o]ccasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability."[28] However, impairments that can be controlled effectively with medication are not disabling.[29] There is substantial evidence in the record to support the ALJ's finding that Plaintiff's symptoms that may otherwise prevent her from working are controlled by medication.

Plaintiff argues that she did not have adequate symptom control while taking medication because she continued to have fatigue and gait difficulty. ECF No. 14 at 13. The Commissioner argues that exam notes show that Plaintiff's symptoms have consistently stabilized when she has taken Avonex-one of her prescribed medications. ECF No. 18 at 12. In November, 2013, Dr. Zhang's PA-C Tauni Urdahl noted that Plaintiff had been taking Avonex since the end of August and had "done well." AR 375. Plaintiff emphasizes that she continued to have fluctuations of her symptoms while she was taking Avonex, ECF No. 14 at 13, but Ms. Urdahl notes that Plaintiff's cognitive ability was only mildly impaired and Plaintiff reported no new neurological symptoms or changes. AR 375.

---

[28] *Lester*, 81 F.3d at 833.
[29] *Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

Ms. Urdahl also reported that Plaintiff had responded well to "multiple [past] exacerbations" with the medication Solumedrol IV. AR 375.

Although Plaintiff's symptoms appeared to worsen in early 2016 after she restarted Avonex, she reported on March 8, 2016 that after she was treated with Solumedrol IV for three days she experienced "good benefit" and "her symptoms improved in about two weeks." AR 492. Apart from this benefit, Plaintiff contends that her continued fatigue and "wide, unsteady gait" reflect a lack of symptom control after this episode. ECF No. 14 at 13-14. However, she did not report any difficulty with pain or weakness, and Dr. Zhang noted she had no abnormal movement in her legs. AR 494. And, as the Commissioner points out, ECF No. 18 at 17, the ALJ did not conclude that the medication stopped all of Plaintiff's symptoms, but it effectively controlled the symptoms that Dr. Zhang described as limiting her working ability when she took it as prescribed. *See* AR 28.

3. **Plaintiff was able to provide full-time care for her daughter.**

Finally, the ALJ afforded Dr. Zhang's opinion little weight because Plaintiff is able to care for her daughter almost full-time without noted difficulty. AR 28. The credibility of a treating physician's restrictions may be evaluated against the Plaintiff's activity at home.[30] At the time of the hearing, Plaintiff stated that she was the primary caregiver for her daughter while her husband worked during the day. AR 47. She stated that she was able to take care of her daughter when

---

[30] *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) ("[T]he restrictions appear to be inconsistent with the level of activity that [the Plaintiff] engaged in by maintaining a household and raising two young children, with no significant assistance from her ex husband.").

she was an infant, and as a toddler the Plaintiff only required help from friends to care for her daughter two to three times a month. AR 47. Furthermore, she stated she was mostly able to keep up with housework and her own personal hygiene, with occasional help from her husband. AR 48. The substantial evidence in the record that Plaintiff provided pertaining to her ability to care for her child and take care of herself is therefore inconsistent with Dr. Zhang's limitations.

Because substantial evidence in the record exists that is inconsistent with Dr. Zhang's opinion, the ALJ did not err by assigning his report little weight.

**B. The ALJ did not improperly discredit Plaintiff's testimony.**

Plaintiff asserts that the ALJ erred by discrediting her symptom testimony.

*a. Standard of Review*

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[31] In the present case, because the ALJ determined Plaintiff's medical impairment could "reasonably be expected to cause the alleged symptoms," she has met step one. AR 25.

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives

---

[31] *Molina*, 674 F.3d at 1112 (internal quotations and citations omitted).

'specific, clear and convincing reasons' for the rejection."[32] An ALJ must make sufficiently specific findings "to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony."[33] General findings are insufficient.[34] Courts may not second-guess ALJ findings that are supported by substantial evidence.[35]

In making an adverse credibility determination, an ALJ may consider, among other things, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) the nature, severity, and effect of the claimant's condition.[36]

### b. *Analysis*

**1) Gaps in treatment and non-compliance with medication reflect a lack of intensity of symptoms.**

The ALJ specifically discredited Plaintiff's testimony partially due to the long periods of time she goes between treatments and her noncompliance with her treatment. AR 25. "[U]nexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" may be relied on to discredit a plaintiff's alleged symptoms.[37] However, a Plaintiff's "failure to receive medical treatment during the period that [she] had no medical insurance cannot support an

---

[32] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).
[33] *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)(citation omitted).
[34] *Lester*, 81 F.3d at 834.
[35] *Id.*
[36] *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).
[37] *See Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989).

ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT - 14

adverse credibility finding."[38] Accordingly, "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment [s]he cannot obtain for lack of funds."[39]

Plaintiff has explained the gaps in her treatment between 2009 and 2013 as being due to her methamphetamine abuse and lack of insurance. *See* ECF No. 14 at 16-17. However, there is substantial evidence in the record to support the ALJ's findings that, despite her lack of insurance, she was able to access free treatment through medical access programs.

The ALJ noted that Plaintiff had not had any "significant" treatment for her MS between 2009 and 2013. AR 25-26. In November, 2009, Plaintiff's medical records note that she could not afford the recommended Tysabri treatment for her MS. AR 354. However, her treating physician "arranged [for] her to contact Biogen [a treatment provider] for [an] assistance program" for Tysabri. AR 356. She met with her physician on several occasions between during 2009 and 2010 after this recommendation, *see, e.g.,* AR 360, 361, 362, 367. On each occasion, her physician encouraged her to enroll in the Tysabri assistance program. *Id*. Despite her access to insurance, and the medical assistance program when she could not afford the treatment, she never sought out the Tysabri program or treatment and lost contact with her physician until 2013. AR 368.

Furthermore, although Plaintiff argues that she had gaps in insurance between 2012 and 2016, as stated previously, the medical

---

[38] *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).
[39] *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).

ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT - 15

records show she could access Tysabri through the assistance program even if she could not afford treatment. *See* AR 356. She also testified at her hearing that she had been receiving free medical assistance, as the drug company for Avonex had been sponsoring her and sending her free treatment. AR 58. She reported she had recently switched to Tysabri, but she testified that the treatment was very expensive and she did not know whether Tysabri had an assistance program. AR 58. This directly contradicts the records that reflect numerous attempts to encourage Plaintiff to enter the Tysabri assistance program, and supports the ALJ's finding that she had access to medical assistance. *See* AR 360, 361, 365, 367. Because Plaintiff did not seek out treatment even with access to the medical assistance plans, the ALJ properly discounted Plaintiff's testimony regarding the severity of her symptoms as inconsistent with her claims.[40]

**2) Plaintiff's living activities are inconsistent with the degree of impairment she alleges.**

As the Court has noted previously, the ALJ found that Plaintiff's ability to care for her daughter with only minimal help from family and friends was inconsistent with the degree of limitations Plaintiff was claiming. AR 27. The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting

---

[40] *See Fair*, 885 F.2d at 603-04.

in bed all day."[41] To that end, "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest of take medication."[42] Accordingly, a claimant's daily activities should not have a negative impact on credibility unless those activities contradict the claimant's other testimony or are transferable to a work setting.[43]

Plaintiff argues that her "bad days" where she is required to lay down and cannot brush her hair or shower due to fatigue would preclude her from performing full-time work. ECF No. 14 at 18-19. However, Plaintiff also testified that on a day-to-day basis she cares full-time for her daughter, AR 47, is capable of "get[ting] up and doing things in spurts," AR 56, will go outside and play with her daughter if she is "feeling up to it," and "usually" visits with friends. AR 52. While she testified that she sits for most of the day, AR 56, her symptoms do not prevent her from typing on a computer. AR 54. There is therefore substantial evidence that Plaintiff's fatigue would not preclude her from performing sedentary work.

Furthermore, Plaintiff testified that she required assistance from her friends or husband on her symptomatic "bad days," which occur only two to three times per month. AR 55. And, as this Court analyzed previously, Plaintiff's symptoms are well-controlled when she is taking her medication as prescribed. *See, e.g.*, AR 375; 492. Plaintiff's activities are relevant because they contradict the severity and persistence of the limitations alleged. The ALJ therefore properly

---

[41] *Garrison*, 759 F.3d at 1016.
[42] *Fair*, 885 F.2d at 603.
[43] *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT - 17

considered Plaintiff's daily activities in discrediting her symptom testimony.

**C. The ALJ did not fail to meet her step five burden.**

At step five, the Commissioner has the burden to "identify specific jobs existing in substantial numbers in the national economy that [the] claimant can perform despite her identified limitations."[44] At an administrative hearing, an ALJ may solicit vocational expert (VE) testimony as to the availability of jobs in the national economy.[45] The ALJ's decision regarding the number of alternative occupations must be supported by substantial evidence.[46] A VE's testimony may constitute substantial evidence of the number of jobs that exist in the national economy.[47]

Plaintiff alleges that the ALJ failed to meet her step five burden because she denied Plaintiff's claim partially on the basis of the vocational expert's testimony. ECF No. 14 at 19-20. Plaintiff argues that the testimony was provided in response to an incomplete hypothetical because it did not take into account all limitations presented by Dr. Zhang. *Id.* However, as the Court previously addressed, this argument merely restates Plaintiff's earlier allegation of error in assigning weight to Dr. Zhang's testimony, which is not supported by

---

[44] *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).
[45] *Tackett v. Apfel*, 180 F.3d 1094, 1100-01 (9th Cir. 1999).
[46] *See Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012); *see also Farias v. Colvin*, 519 F. Appx 439, 440 (9th Cir. 2013).
[47] *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005).

the record. Accordingly, the ALJ's hypothetical properly accounted for the limitations supported by the record.[48]

Plaintiff further alleges that when additional limitations were presented to the VE at the hearing, the VE testified that Plaintiff's limitations would preclude employment. ECF No. 14 at 20; AR 67-68. However, as the Commissioner noted, the hypothetical containing the additional limitations was given to the VE by Plaintiff's counsel. ECF No. 18 at 15; AR 67-68. The hypothetical that the ALJ posed to the VE "contained all of the limitations that the ALJ found credible and [was] supported by substantial evidence in the record."[49] The ALJ's reliance on the VE's answer to the hypothetical she posed was therefore proper.[50]

### V. Conclusion

In summary, the Court finds the record contains substantial evidence from which the ALJ properly concluded, when applying the correct legal standards, that Plaintiff does not qualify for benefits.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.
2. The Commissioner's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.
3. **JUDGMENT** is to be entered in the Commissioner's favor.
4. The case shall be **CLOSED**.

---

[48] *See Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989) (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).
[49] *Bayliss*, 427 F.3d at 1217; AR 63.
[50] *Bayliss*, 427 F.3d at 1217.

ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT - 19

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this  27th  day of September 2018.

> s/Edward F. Shea
> EDWARD F. SHEA
> Senior United States District Judge